STATE OF LOUISIANA *v.* THE WIDOW AND HEIRS OF POYDRAS.

The law imposes a tax of ten per cent in favor of the State, not only on property falling to alien heirs who are non-residents; but also on property falling to citizens of Louisiana, residing abroad. Successions falling to non-resident heirs, who are citizens of any *other* State or territory of the United States, than the State of Louisianna, *are* alone exempted from this tax.

APPEAL from the Second District Court of New Orleans, *Lea*, J.

    *W. W. King*, *H. C. Miller* and Attorney General *Morse*, for the State. *Louis Janin*, for defendant and appellant.

CAMPBELL, J.  This suit is based on so much of two Acts of the Assembly as imposes a tax of ten per cent. on inheritances falling in whole or in part to persons residing out of this State, not being citizens of any other State or Territory of the United States, and as provides the mode of collecting such tax.

The 76th section of the Act entitled "An Act to provide for the assessment and collection of taxes in this State" approved 21st March, 1850, (Session Acts, p. 146,) is in the following words: "Every executor, curator, tutor, or administrator, having the charge or administration of succession property, belonging in whole or in part to a *person residing out of this State* and not being a citizen of *any other State* or Territory of the United States, shall be bound to retain in his hands the amount of the tax imposed by law, and to pay over the same to the State Treasurer; in default whereof every such executor, tutor, or administrator and his securities, shall be liable for the amount thereof."  The rate of tax is not mentioned in this Act, but it is conceded by defendants' counsel that for this, it refers to the Act of 1842.

The 4th section of that Act as published in the Sessions Acts, p. 434, on the English side, reads thus: "That each and every person, *not being domiciliated* in this State, and not being a citizen of any State or Territory in the Union, who shall be entitled, whether as heir, legatee or donee, to the whole or any part of the succession of a person deceased, whether such person shall have died in this State or elsewhere, shall pay a tax of ten per cent on all sums, or on the value of all property which he may actually receive, or so much thereof as is situated in this State, etc.

The counsel of the defendants insisting that the Act of 1850 was not amendatory of the Act of 1842, but that it is only referred to to ascertain the amount of the tax imposed, contends that the Act of 1842 must be construed according to its own terms; and that, thus interpreted, heirs who are citizens of the United States and heirs who are domiciliated in this state are exempt from the tax: that the latter Act contemplates the payment of the tax by heirs *not domiciliated* in this State, whereas the former imposes it upon heirs who reside out of the State, conditions very different, as he alleges.

Plaintiff on the contrary contends that the Act of 1850, being the last upon the subject, must control in case any discrepancy exists between it and the prior enactment.  That the Act is not only applicable to aliens residing abroad; but likewise to citizens of our own State, who reside abroad.  That the apparent discrepancy in so far as the liability of the property of citizens of our own State is concerned, may be reconciled by reference to the French text of the act, which is in these words "Que tout individu, non domicilié dans cet Etat ou qui n'est pas citoyen d'un autre Etat ou Territoire de l'Union," etc.; whereas

22

in the English text the word "*other*" is omitted, so as to make the law read "Each and every person not domiciliated in this State and not being a citizen of *any* State," etc.

Not having the means of reference to the State gazette, we are unable to say in what terms this clause of the Act was promulgated. But the Act itself furnishes conclusive evidence to our minds that the word "other" has been inadvertently omitted in the English text as published in the Session Acts. In the same section of the the Act, in prescribing the duties of the executor or other representative of the estate, the words used are " a person residing out of this State and not being a citizen of any *other* State or Territory," etc. And again in the clause of the same section, which directs that the Judges of the Courts of Probate shall furnish annually to the Treasurer a list of the successions referred to, the following language is used : " whereas persons who are neither *residents* of this State or citizens of *any other* State or Territory in the Union are heirs," etc.

If any doubt had existed in our minds as to the correctness of this interpretation or the intention of the Legislature, it would be removed by an exemplification of the law, procured from the office of the Secretary of State, from which it appears that the word "*other*" is contained in this clause of the enrolled Act, thus establishing a perfect coincidence between the French and English texts.

From this view of the statute we conclude that the tax attaches not only to property falling to alien heirs, who are non-residents, but also to the property falling to citizens of our own State residing abroad. The successions falling to non-resident heirs who are citizens of any *other* State or Territory of the United States, than the State of Louisiana are alone exempted from it, and this exemption was probably intended to satisfy the requirements of the 2d Sec. of the 4th Article of the Constitution of the United States.

With regard to that part of the defence which is based on the assumption of the difference between domiciliation and residence, it may be said that though in strict legal sense a clear distinction does exist, the Legislature in the Act of 1842, has used these terms as synonymous.

It is an established rule in the exposition of statutes, that the intention of the law giver is to be deduced from a view of the whole and of every part of a statute taken and compared together. The real intention when ascertained will always prevail over the literal sense of the terms. Scire leges non hoc est verba corum tenere, sed vim ac potestatem. The words used in one part of the Act (and used but once) are "a person not being domiciliated in this State." In other parts of the Act the words used in reference to the same matter are "a person residing out of this State," "persons who are neither residents of this State or citizens," &c. These terms seem clearly convertible, and if to the rule of interpretation which we have applied to it, we invoke the other rules that the intention may be presumed from the object of the law and that acts in *pari materia* and relating to the same subject, are to be taken together and compared in the construction of them, our opinion of the correctness of the interpretation which we have given is strengthened.

The object of the law it may be fairly inferred was not only "to increase the revenues of the State," as is expressed in its title, but to discourage absenteeism, as has been suggested by the counsel for the plaintiff, an evil from which no State of the Union has probably suffered more than ours. The statute relating to the same subject with which we compare it, is that of 1850. In this the word

THE STATE
*v.*
POYDRAS.

domicil or domiciliated is not used, not being *residents* of and *residing* out of the State, being the only terms applied to the class of heirs whose property is affected by this tax.

But conceding that the father of defendants had become a citizen of the United States and had acquired a domicil or residence in Louisiana, we are of opinion that the residence has been lost, by his residence in France, notwithstanding his repeated declarations of his intention to return and the various causes, which it is alleged, prevented it. It is in evidence, that being a native of France, he came to this country in the year 1805 or 6, being then 26 or 7 years of age, that in the year 1822 he returned to France and purchased an estate in the department of which he was a native and where his parents resided. How long he remained is not stated, but it appears that he was in Louisiana after the death of his uncle in 1824, engaged as one of his legatees and as agent of the others in arranging the affairs of his estate. In 1835, he returned to France and there married a lady whom he took to his estate near Nantz, where she has resided ever since, neither she, nor either of her children having ever been in this country. Whether he ever after his marriage visited Louisiana more than once is left in some uncertainty. One witness deposes that between the years 35 and 42, he made three visits, while several other witnesses examined by the defence, depose to only one visit made in 1841, after which he returned to France and there remained until his death in 1852. These facts tested by the principles established by this court in the case of *Franklin* and her minor children vs. *Franklin et al.* trustees, decided in June, 1852, but not yet reported, would seem to prove the domicil of deceased to have been in France at the time of his death. But even though he had acquired no domicil in France, he had forfeited his residence in Louisiana by a voluntary absence from the State of two years. On this point the provisions of the law are clear and explicit; the 3d Sec. of the Act of March, 1816, (B. & C. Digest,) expressly declaring that "residence once acquired, shall not be forfeited by absence on the business of the State, or of the United States; but a *voluntary* absence from *this State for two years, or* the acquisition of residence in any other State of this Union, shall forfeit a residence within this State." It is not pretended the ancestor of defendants was absent either on the business of this State or of the United States. If then, the father had lost his residence, his children born abroad of an alien mother and who resided constantly abroad, neither of them having ever visited this State, can not be held to be residents of this State or domiciliated therein.

But it is next urged by defendants' counsel that the Act of March, 1842, being contrary to the Article 127, of the Constitution of 1845, is thereby abrogated. The Article referred to, is in the following words: " Taxation shall be equal and uniform throughout the State. After the year 1848, all property on which taxes may be levied in this State, shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property, shall be taxed higher than another species of property of equal value on which taxes shall be levied."

The rule proclaimed in this article, is but the reiteration of a great fundamental principle, which lies at the foundation of all well organized governments, that taxation must be uniform and equal, and while we are disposed to give to it its fullest force and effect we are unable to discover in what it is repugnant either to the Act of 1842 or the Act of 1850. To be uniform, taxation need not

be universal. Certain objects may be made its subject and others may be exempted from its operation, certain occupations may be taxed and others not; so some occupations may be taxed for a greater amount and others for a less, but as between the subjects of taxation in the same class, there must be an equality. The object subjected to taxation in the present case is a succession within the State falling to alien heirs who are non-residents. By the terms of the Act, the tax is equal and uniform, the rate of the tax and the description of property subject to it, being the same throughout the State. See 2d *Munici-ipality* v. *Duncan*, 2 A. 188. *Lafayette* v. *Cummins*, 3 A. 674.

It may be proper to add in this connection that the law imposing this tax has been several times passed upon by this Court since the adoption of the Constitution of 1845, and never before, so far as we are informed, were doubts of its constitutionality ever expressed. See *Succession of Pehan*, 5 A. 304. *State* v. *Martin*, 2 A. 667. *Succession of George*, A. 223.

It is admitted that by the inventories, the succession is valued at $452,088 00. Judgment was rendered in the District Court, in favor of the plaintiff for forty five thousand two hundred and eighty dollars and eighty cents : and considering that there is no error in said judgment, it is decreed that it be affirmed with costs.