NORTON
v.
CAMMACK.

---

## PATRICK FOX *v.* THOMAS SLOO, Executor.

A court will not enforce a claim for the value of services, where it is based on and springs directly from an illegal employment.

10 11
105 606

10 11
106 697

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Race & Foster*, for plaintiff. *Rawle*, for defendant and appellant.

SLIDELL, C. J. (OGDEN, J., absent.) In August, 1850, the Council of Municipality No. Two passed an ordinance, by which it was Resolved, "That the Commissaries of the wards are hereby directed to notify all owners of lots that require filling, to have the same filled to a proper level within thirty days, under a penalty of a fine of five dollars per day, recoverable before any court of competent jurisdiction, for every day after the notification that said lots remain unfilled ; and that the Surveyor be directed to have all lots that may remain unfilled after said thirty days from notification filled at the expense of the owners."

A few months previous was enacted a statute, entitled "an Act relative to the city of New Orleans," the general scope and purpose of which seems to have been to check municipal extravagance and corruption, and which contained, among other restrictive provisions, the following: "Be it further enact ed, That all contracts for public or other works, ordered by any of the said municipalities, shall be offered by the Mayor at public auction, and given to the lowest bidder ; and no Alderman or other officer of the municipality shall be directly or indirectly interested in any such contract or work under pain of nullity of said contracts, and of forfeiting his office for misdemeanor." Session Acts, 1850, p. 131.

Under the ordinance above mentioned, publication was made, notifying the various proprietors of unfilled lots in the first and second wards, of its passage

and requisitions. In the list of proprietors enumerated in this advertisement, was the estate of which the defendant was executor, said therein to be represented by Mr. *Rawle*, as agent.

*Patrick Fox*, the plaintiff, applied to *Rawle* to be employed to fill the lots, and offered to do it at sixty-five cents a cubic yard. *Rawle* refused to employ him. *Fox* repeated his visits several times, and at last told *Rawle* he had been engaged by the Commissary to do the work, upon which *Rawle* replied that the contract was illegal, and would not be paid for by the estate. Nevertheless, upon a written order of the Commissary, approved by the Surveyor, directing *Fox* to do the work, and in which no price was named, *Fox* did the filling, and having obtained a certificate of the Surveyor, that the work was done in accordance with the proper grade, presented a bill at the rate of seventy-five cents per cubic yard, and on refusal of payment, brought this suit, which resulted below in a judgment in his favor at that rate, predicated on the testimony of two witnesses that such was the usual, or about the usual, price at that time, although we have seen the plaintiff was willing to contract at a much lower rate.

The defendant has appealed, and relies mainly for a reversal on the Statute of 1850.

That statute, as we have observed, was evidently framed for the purpose of checking municipal extravagance and corruption. The clause in question was aimed at the correction of those evils by subjecting municipal contracts to public competition. The language is quite broad enough to cover the work in question : " All contracts for public or other works ordered by any of the said municipalities." There might be cases not within the fair perview of the statute, such, for example, as works required to be done upon a sudden emergency, but there is no reason to exclude the present case from its operation. By obedience to the statute, it was reasonable to suppose much money would be saved to the public treasury, and individuals protected from oppressive charges, which it is well known have fallen heavily upon owners of vacant property under the old system of contracting. It was a remedial statute, and should receive from courts of justice such a construction as will tend to correct the mischief at which it was aimed. Its policy, which is very plain, must be respected and enforced.

The plaintiff in this case has, in connection with the municipal officer, acted in violation of the statute. There is nothing to show on the part of the municipal officer, any improper motive; but the omission of duty is clear, and both he and the plaintiff are to be considered as participants in the violation of a remedial statute. The employment, then, of the plaintiff, was illegal ; and his claim based on, and springing directly from that employment, cannot be aided in a court of justice, without disregarding the policy of the law and rendering its requisitions futile.

There is certainly hardship involved in a result which enriches the proprietor at the plaintiff's expense ; but it is a hardship which, however it may and should recommend itself to the conscience of the proprietor, cannot judicially countervail the higher consideration of public policy. It must also be observed that the hardship is of the plaintiff's own seeking.

We have not overlooked the maxim familiar in our jurisprudence and embodied in our code, jure naturæ requum est neminem cum alterius detrimenta et injuria fieri locuphliorem. It was on that principle the Roman Jurists held,

that he who acted for another by transacting his business, or by making repairs on his property, could recover the amount of the expenses incurred or the value of the repairs, provided the acts of the *negotiorum gestor* were necessary and useful to the person for whom he acted. Porter, J., in *Police Jury* v. *Hampton*, 5 N. Series, 392. But we apprehend that this equitable doctrine cannot be safely extended to one who intrudes his services upon another against his will, and in contravention of the policy of a statute. See *Jenkins* v. *Gibson*, 3 Ann. 204.

Judgment reversed, and judgment for defendant; plaintiff to pay costs in both courts.