CHARITY HOSPITAL v. MEYEAUX

———

(July 14, 1927. Opinion and Decree.)

———

*(Syllabus by the Court)*

ON MOTION TO DISMISS

1. **Louisiana Digest—Appeal—Par. 285.**
The Charity Hospital is a State institution, exercising public functions, within the meaning of Act 173 of 1902, exempting State boards and commissions from furnishing bonds in judicial proceedings. The exemption ex-

tends to suits by the Hospital for charges, which, under Act 126 of 1924, it is authorized to collect, under certain circumstances, for services rendered to employees covered by the compensation law.

2. **Louisiana Digest—Laws—Par. 70; Action—Par. 12.**

Act 126 of 1924 gives a right of action to the Charity Hospital directly against the employer under the Employers' Liability Act for the value of medical services rendered to the employee by the Charity Hospital, whether or not the employer was active in sending the employee to the hospital, such being the policy and purpose of the Act.

Appeal from Civil District Court. Div. "A." Hon. H. C. Cage, Judge.

Action by Charity Hospital against Cyril Mayeaux, et al.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Emmet Alpha, of New Orleans, attorney for plaintiff, appellant.

Denegre, Leovy & Chaffe and Harry McCall, of New Orleans, attorneys for defendant, appellee.

## ON MOTION TO DISMISS

WESTERFIELD, J. This motion is based upon the allegation that "no appeal bond has been furnished by the Charity Hospital, appellant, and that there is no warrant in law for the action of the trial Judge in entering an order authorizing the said appellant to take this appeal without security."

The appellant insists upon its right to appeal, without security, as a municipal board, exercising public functions within the meaning of Act No. 173 of 1902, reading as follows:

"That the State Board of Education, Parish or Municipal School Boards, the Drainage and Sewerage Commission of the City of New Orleans, the Board of Liquidation of the City Debt of New Orleans, the State Board of Law Examiners, the State Board of Medical Examiners, the State, Parish and Municipal Boards of Health and other State, Parish and Municipal Boards or Commissions exercising public power or administering public functions shall not be required to furnish any bond whether of appeal or otherwise in any judicial proceedings instituted either by or against said Boards or Commissions."

The argument is support of the motion to dismiss is that in this particular case the Charity Hospital is not "exercising public power or administering public functions" because in this case it sues for hospital charges authorized by Act 125 of 1924 permitting such charges, under certain circumstances in connection with hospital services to employees covered by the compensation act, and therefore "when Governmental Agency leaves the ordinary fields of public service and enters the arena of private profit, it can not invoke the special privileges and exemptions with which public agencies are ordinarily clothed."

The Charity Hospital is supported almost exclusively by direct appropriation from the State Treasury, the last appropriation bill carrying an item of $717,384 for maintenance. The Act of 1924 merely authorizes the Hospital in certain cases to collect the cost of treating individuals to whom compensation is due under the compensation law. Whether, in the instant case, it can collect this expense must be decided, when the case is heard ·on the merits. But the Hospital is none the less a public institution, and it is serving the public as well in this instance as upon any other occasion. Assuming the fees sued for can be recovered, is it not in the public interest to collect them? We are

told that such fees, in the yearly aggregate, will be insignificant, compared with the amount received from the State Treasury. But, whether large or small, in collecting the fees, the Hospital will be more or less supported, and the State of Louisiana more or less relieved of its burden. We conceive it to be the duty of the Hospital to collect these charges, in cases permitted by law.

The motion to dismiss will be denied.

———

CLAIBORNE, J. This suit is against an employee, Cyril Meyeaux, and his employer, the Postal Telegraph Cable Company, for medical and hospital services rendered and medicines furnished the employee, Meyeaux, by the plaintiff hospital.

The plaintiff alleged that Meyeaux was and employee of the Postal Telegraph Cable Company carrying messages upon a motorcycle through the streets of New Orleans, which is a hazardous occupation falling under the provisions of the several employers' liability acts of this State; that while riding a motorcycle upon the streets of New Orleans, in the performance of his duties, he was injured in a traffic accident in which he suffered a fractured femur and other injuries; that answering a call for that purpose, the plaintiff sent out its ambulance which took up said Meyeaux and carried him as a patient to its hospital and there ministered unto him in their several professional capacities; that said Meyeaux remained a patient within the hospital for sixty-three days for which plaintiff charged two dollars a day or $126; that plaintiff took four x-rays for which it charges $20; that Meyeaux's femur was set, for which it charges $30; and $5 for ambulance service bringing him to the Hospital, and $69 for medical services, though greatly in excess in value, making an aggregate of $250; that all of said charges are reasonable and according to the charges of other first class hospitals; that the Postal Telegraph Cable Company was notified of the accident to Meyeaux and that he was a patient of plaintiff Hospital; that under the law Meyeaux and the Postal Telegraph Cable Company are liable in solido to plaintiff for said hospital charges, which they have failed to pay notwithstanding demand.

The Postal Telegraph Cable Company excepted that the petition disclosed no cause or right of action against it.

The trial Judge in a written opinion, was of the opinion that the employer was liable only in cases where by some act he sent the employee to the hospital to be treated. For this reason, and for the reason that the plaintiff alleged that it had sent out its ambulance and itself carried the employee to the hospital, and because the telegraph company had not sent Meyeaux there, the Judge maintained the exception and dismissed plaintiff's suit against the telegraph company.

The plaintiff has appealed.

This suit is brought by virtue of Act 126 of 1924, page 193. It is entitled:

"An Act To Authorize State Charity Hospitals to make charges and recover same by suit in cases where patients come within the provisions of the Employers' Liability Law; to study abuse of State Charity Hospitals; and to take necessary measures to discourage such abuse.

"Be it enacted, etc., That where a patient in any of the State Charity Hospitals shall come within the provisions of the Employers' Liability Law, the Board of Administrators shall be authorized to make appropriate charges for services rendered to such patient, in accordance with such charges in other Hospitals of the First Class, including physicians' and surgeons' fees, and such patient shall be liable there-

for, and the Board of Administrators shall be authorized to bring suit against the patient for the recovery thereof; and the Employer, or the Employers' Liability Insurance Company, sending such patient to the Hospital shall be made co-defendant and held liable in solido with such patient."

The liability of employers and of liability insurance companies towards the injured employee for medical services is fixed by Section 8 S 5, bottom of p. 402 of Act 216 of 1924. It reads as follows:

"The Employer shall in every case coming under this Act furnish the Employee reasonable medical, surgical, and hospital services and medicines not to exceed $250, etc."

Under this Act it would seem that the employee alone could demand and sue for the medical services rendered to him, whether he had paid them or was only liable for them. Assuming for the purposes of the argument that the employer became liable for them, the employee alone could demand them of him, and not the person who rendered the services.

Act 126 of 1924 therefore brought about two amendments to the existing law.

The Charity Hospital acts were amended so as to permit it to charge employees under the employers' liability acts for services rendered to them; and it amended the Employers' Liability Act of 1924 and previous acts by authorizing the hospital to demand directly from the employer the value of services rendered to the employee.

But the contention of the employer in this case, defendant herein, is that it is not liable for the medical services rendered by the hospital to its employee for the reason urged by it and sustained by the trial Judge that it had no part and took no action in "sending the employee to the hospital." The question for solution therefore is, is it essential that the employer should have been the active agent in sending the employee to the hospital?

The body of an act must be interpreted by its title, by the intention of the legislator, and by the evil intended to be remedied, and the benefit to be attained.

A history of the act is therefore permitted to aid in its interpretation.

Prior to Act 126 of 1924 the Charity Hospital was so in name as well as in fact. It was not authorized to charge for services rendered and did not charge. The result was that many employees in hazardous occupations resorted to the hospital in case of accident, whether they were sent there or not by their employers.

In as much as the hospital made no charge to them, they had no right to claim from their employers compensation for medical services which had been rendered free to them.

Thus it came to pass that whenever an employee in a hazardous occupation had a claim against his employer, the item of medical expense for those who had been treated at the hospital was eliminated, and the employer profited to that extent for an obligation imposed upon him by law. This amount might reach $250 in a hospital which charged for its services.

The result was that employers sent their injured employees to the hospital, and this unloaded upon it a charge which the law had imposed upon them. The employers were quick in realizing their profit in this matter and took advantage of it by seeing that their employees went to the hospital. In that manner the hospital was crowded with that class of patients.

The object of the Legislature in adopting Act 126 was to relieve the hospital of this unrequited burden of Employers' Liability

Law, to correct the abuse upon State charity aid, as the title of the law indicates, and to place back this burden upon the employer or the employers' liability insurance company who were paid to assume the burden. The object of the law was not to extract payment from the employee, but to give a right of action to the hospital against the employee, so that the employee might claim it from his employer, and also to authorize the hospital, subrogated to the rights of the employee, to recover from the employer what he owed to the employee up to the sum of $250. It was immaterial whether the employer had "sent" the employee to the hospital; that was merely an incident or an accident; the object of the law was not to punish the employer for "sending" an employee or to fix a liability upon him for so doing; it required no law to make the employer liable who "sent" his employee to the hospital; he would have been made liable therefor by existing laws; the moment the law gave the hospital the right to charge; the object of the law was to give the hospital a right to charge the employee, and if it was not paid, the further right to demand from the employer the same amount up to $250 which the employee would have had a right to claim from his employer. In short, the object of the law was to prevent the employer by any means from shifting the performance of his obligations under the Employers' Liability Act from himself and transferring them to the Charity Hospital without benefit to itself.

To give the words "sending" the strict interpretation of the learned trial Judge would be paralyzing the act. It cannot be presumed that the Legislature intended to kill its own progeny. When Portia, the strict doctor and interpreter of laws, decided that though Shylock was entitled to his pound of flesh nearest the heart his bond did not give him a jot of blood, his interpretation defeated the bond. So in this case to limit the recourse of the hospital to cases when the employer "sends" the employee to the hospital would defeat the purposes of the Act.

The judgment of Portia might have been ingenious but would scarcely stand the test of judicial criticism. The unguarded use of this single word "sending" is not sufficient to defeat the evident and equitable purposes of the act. There is no doubt that under the statute the employee, Meyeaux, might have sued his employer the telegraph company, for any charges paid or due by him to the hospital. There is no reason why the law could not have authorized the hospital, as it has done, directly to sue the company for its own benefit and to the discharge of the employee.

An additional evidence that the Legislature did not intend to make the "sending" by the employer to the hospital an essential condition precedent to the right of the hospital is that the Act further provides that:

"It shall be the duty of the authorities governing the Hospital to give notice to the employer or the Insurance Comany in such cases that the patient is being treated and that charges will be made therefor in all such cases, etc."

Would the statute have required this superogatory notice if it had required the employer to "send" the employee? Did the employer who had "sent" his employee to the hospital need to be notified of his own previous act?

Again, if under the statute the hospital had the right to charge employees it was not necessary that the statute should have given the right only to employers "send-

ing" patients. Employers "sending" patients would have been bound under general principles. Therefore it is clear that the statute referred to others who would not be otherwise bound except for the Act of 1924.

C. C. 18: "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it."

"A statute must be construed with reference to its object, to the legislation and system of which it forms part in order to ascertain its true meaning and intent, and if its purpose and well ascertained object are inconsistent with the precise words of a part the latter must yield to the paramount and controlling influence of the will of the Legislature resulting from the whole." Com'l Bank vs. Foster, 5 La. Ann. 516.

In Fox vs. Sloo, 10 La. Ann. 11, on p. 12 Judge Slidel said:

"It was a remedial statute, and should receive from Courts of justice such a construction as will tend to correct the mischief at which it was aimed. Its policy which is very plain must be respected and enforced." 4 La. Dig. 629, S. 70.

Courts must not look to any single word but to the whole scope of the statute. State ex rel. Harper vs. Judge, 12 La. Ann. 777.

"It is an established rule in the exposition of statutes, that the intention of the law giver is to be deduced from a view of the whole and of every part of a statute taken and compared together. The real intention when ascertained will always prevail over the literal sense of the terms." State of La. vs. Widow and Heirs of Poydras, 9 La. Ann. 166; State vs. Fruge, 106 La. 694 (697), 31 So. 323; State ex rel. Reuter vs. Board of Com'rs of N. O., 161 La. 212, 108 So. 417.

In Landry vs. Klopman, 13 La. Ann. 345, Judge Merrick said:

"But an adherence to the letter and a violation of the spirit of the instrument ought not to be tolerated or supposed possible."

A statute against horse racing applies to mule races. McElveen vs. Goings, 116 La. 977, 41 So. 229.

A statute will not be construed so as to defeat its evident object. Smith vs. Lyons Cypress Co., 140 La. 507, 73 So. 312.

In State ex rel. Rrd. vs. Nicholls, 30 La. Ann. 980, in interpreting the Funding Act of 1875, Judge Manning said on p. 982:

"A rule of statutory construction, the soundness of which is attested by long use, and the frequent and continuing approbation of judicial tribunals, is that the intent of the lawmaker is to be ascertained by inquiring what was his motive in legislating. What was the mischief sought to be avoided or remedied, and what the object or good to be attained?

"Contemporaneous history may be resorted to, and the discussions attendant upon the progress of the legislation through its various stages, as well as the project of the law, in order to discover the meaning and scope of the law itself.

"Now if we separate the expressions referred to from the Act, and ignore the general tenor of the law, and disregard, or refuse to consider, its history and the circumstances attendant upon, and which provoked its birth, so to speak, there could be given but one construction of the phraseology of the thirteenth section of the Funding Act, and that construction is opposed by the history of the legislation, by the intent of its framers as disclosed at every anterior stage of its progress, by the reasons and motives which were assigned as inducements for its adoption and by arithmetical demonstrations of the basis upon which the consolidated debt was calculated."

In state ex rel. Howell vs. Echeveria, 33 La. Ann. 715, the Court said:

"The first thing then, to be ascertained in the construction of statutes, is; first the object to be attained, and second, the means to be employed. The first is,

as a general rule, the intention of the lawmaker; the second, what facts within and without the statute are to be inquired into to ascertain the intent of the doubtful phraseology. Sedgroick on Construction, 193; N. O. & N. W. R. Co., et al., vs. Town of Vidalia, 117 La. 566, 42 So. 139.

In Lake vs. Parish of Caddo, 37 La. Ann. 789, Judge Manning said:

"A sound and philosophical rule of construction of all law, organic as well as statutory, is to ascertain the mischief sought to be remedied, and so to use the appliances the law has provided for its extirpation, that is to construe the law so as to make it effect the purpose for which it was enacted."

In Bernard vs. Noell, 45 La. Ann. 1135, 13 So. 737, Judge Nicholls said on p. 1137:

"To discover the true meaning of a law we must often consider the reason and spirit of it, the cause which induced the Legislature to enact it, and the mischief which it sought to prevent or to remedy. However general may be the terms in which it is couched, it only extends to those things or persons it appears the Legislature intended to reach and apply to."

Also Shreveport Gas, Elec. L. Co. vs. Caddo Parish, 47 La. Ann. 67, 16 So. 650; State ex rel. Dauphin vs. Ellis, 108 La. 540 (549), 32 So. 335.

"The letter of the law, though unambiguous may be disregarded with the honest intention of seeking the spirit, and when leading to an absurd conclusion must be rejected for one that is reasonable." 1 H. D. 784, S. 3; 4 La. Dig. 629, So. 70.
"To construe the words 'prosecution pending' as meaning that the witnesses were to be detained in prison until after an indictment should be found would be to defeat its purposes. The words 'prosecution pending' evidently meant 'accusation pending.'" State vs. Jackson, 111 La. 344, 35 So. 593.

In Succession of Carbajal, 154 La. 1060, 98 So. 666, Judge Dawkins on page 1066 quoted:

"The true intention of the Legislature, when ascertained, must always prevail over the literal sense of the terms employed. To know the law is not to grasp its words, but its force and power. State vs. Poydras Heirs, 9 La. Ann. 165. The letter of the law may be disregarded with the honest intention of seeking its spirit when it leads to an absurd conclusion, and the judge is bound to recede from the letter until he arrives at a reasonable conclusion. Ardry vs. Ardry, 16 La. 264. See also 1 H. D. 786; Cox vs. Williams, 5 N. S. 139; Bank vs. Foster, 5 La. Ann. 516; State vs. Wiltz, 11 La. Ann. 439; Church vs. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; U. S. vs. Kirby, 7 Wall. 482, 19 L. Ed. 278."

In the case of Church of the Holy Trinity vs. U. S., 143 U. S. 457, Justice Brewer said:

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within the spirit, nor within the intention of its makers. This has often been asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the Judge for that of the Legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follows from giving such broad meaning to the words, makes it unreasonable to believe that the Legislator intended to include the particular act. As said in Plowden 205: 'From which cases, it appears that the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance, etc. If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The Court must restrain the words. The object designed to be reached by the Act must limit and control the literal import of the terms and phrases employed.'
"Among other things which may be considered in determining the intent of the Legislature is the title of the Act. Again, another guide to the meaning of a statute

is found in the evil which it is designed to remedy; and for this the Court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body. It is the duty of the Courts, under those circumstances to say that, however broad the language of the statute may be, the Act, although within the letter, is not within the intention of the Legislature, and therefore cannot be within the statute."

Therefore Act 126 of 1924, in order to carry out the intention of its framers and to remedy the evils in contemplation and to attain the benefit desired must be construed as giving a right of action to the Charity Hospital directly against the employer under the Employers' Liability Act for the value of medical services rendered to the employee by the Charity Hospital, whether or not the employer was active in sending the employee to the hospital.

The exception of no cause and of no right of action filed by the defendant herein is therefore overruled, and the judgment appealed from is reversed and set aside and the case is remanded for further trial according to law and the views herein expressed.