Hunt, J.,
delivered the opinion of the court:
The claimant was a soldier in the Army of the United States from 9th March, 1861, until 9th March, 1864, when he was honorably discharged. An invalid pension was granted to him on the 13th March, 1865, and was subsequently increased, such increase commencing June 6, 1866. During the time of his service in the Army he contributed to the Soldiers’ Home, located at Washington, D. C., the sum of 12£ cents per month, deducted from his monthly pay. On the 13th September, 1876, he was admitted an inmate of the Soldiers’ Home. From that date to the date of his filing his petition in this case he has continued to enjoy its benefits. During this period his pension has been paid to the treasurer of the Home.
He now brings this suit to recover the sum thus paid.
The claimant’s right is derived from the provisions of law found in Chapter II, Title LIX, of the Revised Statutes of the United States. The chapter is entitled “The Soldiers’ Home,” and was manifestly intended to constitute a complete body of laws by which the institution was to be regulated and controlled, the rights of its inmates defined, and the terms and conditions prescribed under which persons might become its inmates and entitled to enjoy its benefits. The chapter provides who shall be members of the Soldiers’ Home; who shall constitute a board of commissioners, and what shall be their duties; who shall be officers of the Home; how and by whom sites and buildings shall be procured; appropriates funds for its support; enforces a deduction of 12 J cents per month from the pay of every officer, musician, artificer, and private of the Army, to be *167 passed to tbe credit of tbe Home; but expressly declares tbat iu the case of regiments of volunteers.- or other corps or regiments raised for a limited period or for temporary purposes, such deduction shall only be made with their consent; provides tbat the fact that a pensioner for wounds or disability has not contributed shall not preclude himfrom admission to the Home, but such pensioners shall surrender their pensions to the Home during their stay therein; designates what persons are entitled to the benefits of the Home, viz : 1st, every soldier who has served or may serve honestly and faithfully twenty years in the Army 5 2d, every soldier or discharged soldier, whether regular or volunteer, rendered incapacitated for further service from disease or wounds incurred in the service; 3d, the invalid and disabled soldiers, whether regulars or volunteers, of the war of 1812 and subsequent wars; excludes convicts and other unworthy persons from the benefits of the Home; provides for the discharge of those admitted for disability on the recovery of their health; and, finally, subjects all inmates to the Rules and Articles of War in the same manner as soldiers in the Army.
It is apparent from this summary that this chapter is designed to embrace the entire subject of all antecedent statutes relating to the Soldiers’ Home ; that it forms a revised and condensed statement of all the laws now in force on the subject, including all that was intended to be preserved of the old laws, and establishes with great minuteness and particularity of detail everything necessary to the entire and appropriate use, management, and discipline of tbe institution.
In order to determine the rights of the claimant involved in this suit, it becomes necessary to make a more critical examination of those sections of the law which regulate and define the terms upon which inmates are admitted to enjoy the benefits of the Home.
Section 4814 declares that—
‘‘AH soldiers of the Army of the United States, and all soldiers who have been, or may hereafter be, of the Army of the United States, and who have contributed, or may hereafter contribute, according to section 4819, to the Soldiers’ Home hereby created, and the invalid and- disabled soldiers, whether regulars or volunteers, of the war of 1812, and of all subsequent wars, shall, under the restrictions and provisions which follow, be members of the Soldiers’ Home, with all the rights annexed thereto.”
*168 The contribution here referred to according to section 4819 is exacted in the following terms:
“ There shall be deducted from the pay of every non-commissioned officer, musician, artificer, and private of the Army of the United States the sum of 12£ cents per month, which sums so deducted shall, by the Pay Department of the Army, be passed to the credit of the commissionérs of the Soldiers’ Home. * * -- But the deduction of 12£ cents. per month from the pay of non-commissioned officers, musicians, artificers, and privates of l’egiments of volunteers, or other corps or regiments raised for a limited period, or for a temporary purpose or purposes, shall only be made with their consent.”
These sections of the statutes recognize and create two distinct classes of beneficiaries of the Home. The. first class is composed of all soldiers, &c., of the Army who have contributed qr may hereafter contribute to the support of the Home, and whose contributions are involuntary assessments required to be deducted from their monthly pay; and of non-commissioned officers, &c., of volunteers or other coiqis or regiments raised for a limited time or a temporary purpose, whose contributions are voluntary, and shall only be made with their consent.
The second class is composed of invalid and disabled soldiers, regulars or volunteers, of the war of 1812 and of all subsequent wars, whose services must have been anterior to the foundation of the Home, and who, therefore, could not have contributed.
In other words, these sections clearly distinguish between one class of persons who are contributors and another who are non-contributors.
To those who are contributors, the doors of the Home are at once thrown open; but to those who are non-contributors they are closed, except on prescribed conditions. Soldiers wounded or disabled in the service, to whom pensions have been granted, although they may not have contributed, are not precluded from admission to the Home; but they must surrender their pensions to it during the time they remain there and enjoy its bepefits. Sention 4820 of the Revised Statutes declares that—
“ The fact that one to whom a pension has been granted for wounds or disability received in the military service has not contributed to the funds of the Soldiers’ Home shall not preclude him from admission thereto. But all such pensioners shall surrender their pensions to the Soldiers’ Home during the time they remain therein and voluntarily receive its benefits.”
The object and spirit of the whole legislation seem to ha ve *169 been to secure and maintain, by means.of contributions levied upon all, a suitable home for soldiers who have grown old or become disabled in the service of their country. The right of membership is made to depend on the fact of contribution.' Those who contributed out of their pay during their service become members; but pensioners who did not then contribute are required to contribute now, on becoming members, by surrendering their pensions during the period they enjoy the benefits of the Home. The forced- contribution per month is so light and so judiciously adjusted as to be scarcely felt by those upon whom it is levied, and seems to have been based, as was suggested in argument, upon a principle analogous to that of the contract of insurance, where one of many who pay small assessments, upon the happening of a contingency, derives disproportionately great advantages.
This interpretation of the statutes is in entire harmony with section 4821 of the chapter under consideration. That section declares who only shall be entitled to the benefits of the Home, and excludes all others. - Those admitted are, 1st, soldiers who have served or may serve in the Army faithfully for twenty years; 2d, those who may have suffered or may suffer under disabilities in the service; and, 3d', the invalid soldiers of the war of 1812 and subsequent wars. The first class must necessarily have contributed monthly under the law. The second must also have contributed, in like manner, if they became disabled since the foundation of -the Home in 1851; and the third class must have been pensioned before the Home was established, and they contribute by surrendering their pensions during their stay there. The rule of contribution applies alike to all classes who desire the benefits of the institution and are entitled to them.
From what has been said, it follows that the claimant, having contributed to the funds of the Soldiers’ Home, is entitled to its full benefits, and that he is not required to surrender his pension, as other pensioners are required to do in case they have not previously contributed to the institution.
■ It is contended in behalf of the Government that, if the terms of section 4820 of the Revised Statutes may be fairly interpreted so as to reproduce the law as it previously stood, to give to the section a modifying effect would be unwarranted. But. in this instance the terms are too plain to admit of any doubt. *170 There is no room for interpretation. If the section works a modification of the previous laws, the court is not at liberty to make it work otherwise; in other words, to disregard its provisions, and, by a forced construction, to reproduce the old law in their stead. Courts sit to administer and not to make laws; and although it is an admitted rule that they may, upon occasion, look beyond a statute which is the subject-matter of interpretation for the purpose of ascertaining its meaning, that rule has no application to cases where the language is plain and unambiguous, the grammatical structure simple and accurate, and the meaning of the whole intelligible and obvious to any ordinary understanding. Whatever palpable modifications, alterations, or changes of pre-existing laws may be found in the Bevised Statutes are as much in force as any of their other provisions.
■ The principle applicable to interpreting a revision of laws similar to that now under consideration has been so often enunciated as to become familiar. A reference to a few authorities of acknowledged reputation will not, however, be inappropriate:
“It is a well-settled rule,” said the supreme court of Massachusetts, Wilde, J., “that when any statute is revised, or one act framed from another, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance; which is altogether inadmissible. We are not, .therefore, at liberty to suppose that the proviso or exception was omitted by mistake.” (Ellis v. Page, Pick., 45.)
The rule is thus laid down in Smith’s Commentaries on Statutory Construction, § 785: “ Where some parts of a revised statute are omitted in the revising act, the parts omitted are not to be deemed as revived by construction, but are to be considered as annulled.” And again, § 786, id.: “A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law- as well as on reason and common sense, operate to repeal the former.”
The United States circuit court for New York, in the case of Boucicaultv. Hart, applied these principles in the interpretation of these very Bevised Statutes. The court held, through Mr. Justice Hunt, its organ: “The various acts mentioned have been referred to to show to some extent the history and previous *171 condition of the law on the subject under consideration. They are all superseded by the Reidsed Statutes of the United States, a work undertaken by authority of a statute passed June 27, 1866, and taking effect on 1st December, 1873.”, (13 Blatch., 52. See also Holmes v. Wilts, 11 La. Ann., 446.)
The case of jurors in the United States courts who may be required to take the additional oath prescribed in section 821 of the Revised Statutes is in point to show the effect given to the provisions of these statutes. Although the oath had been by an act of Congress expressly abolished, yet, in consequence of its having found its way into the Revised Statutes, and, being there, it is treated as a valid enactment, and has been held to be so by the courts. In United States v. Hammond (2 Wood C. C., 203), the court said: “The compilers may have exceeded their authority; Congress may not have designed to re-enact section 820, but it has done so, and we cannot go behind the law and cure the mistakes and inaccuracies of Congress.” “We are bound,” said Mr. Justice Buller, in Jones v. Smart (1 Term, 44), “to take the act of Parliament as they made it.”
But the repeal of the sections of the acts of 1851 and 1859 does not result solely from the fact that the subject-matter of each of them is embraced in the provisions of section 4820, Revised Statutes. Section 5596 of those statutes expressly repeals all acts prior to the year 1873 “any portion of which is embraced in any section, of the revision, and provides that the section applicable shall be in force in lieu thereof.” (Rev. Stat., §§ 5596, 1085.) Congress evidently did not intend to re-enact either of the formér statutes, blit did intend to enact a new statute in lieu of them both.
These Revised Statutes were enacted in order to present the entire body of the laws of the United States to the people in a concise and compact form, extricated from the confusion in which they had become involved in seventeen large volumes through which they lay scattered. The object was to relieve one from the necessity of having recourse to the earlier statutes, except in cases of grave doubt or of absolute conflict between different sections of the revision. If errors have crept into the work of the commissioners, it is better that they should stand until corrected by subsequent legislation than that the whole body of laws should be thrown into such doubt and confusion that no one may longer feel any confidence that he knows *172 what the law is by reading the latest enactment made by Congress. Congress seems to have entertained these views, and to have acted in accordance with them. Thus we find that in 1875 an act was passed “ to correct errors and supply omissions in the Revised Statutes of the United States,” and that in several hundred instances corrections of errors were expressly made in these statutes (18 Stat. L., 31C). Other corrections have been since made by other similar acts, thus showing that as the Revised Statutes stand they constitute, and are held to be, the law, until altered or repealed by express subsequent legislation.
But if we recur to previous laws on this subject, their history and condition, we are justified in believing that such changes as may have been effected by the Revised Statutes are not, in this instance, the result of - accident or oversight, but were effected deliberately and ex industria.
Under the original statute founding the “Military Asylum,” all soldiers who contributed became members, and pensioners who had not contributed became entitled to its benefits only upon transferring their pensions (9 Stat. L., 595, 596, §§ 1, 5, 7). So the law stood for 8 years, when, in the appropriation act of March 3,1859, it was provided that pensioners of the war of 1812 and of subsequent wars might be admitted to the Asylum, and that all pensioners should transfer their pensions during the time they remained therein.
From this brief statement we at once perceive that the legislation had become involved in uncertainty and contradiction when the revision of laws was undertaken. An examination of section 4820, Revised Statutes, will show that portions of all of the previous sections on the same subject-matter are embraced in its provisions. It is made up of passages- taken from both statutes. The order of the sentences adopted is sometimes inverted and their phraseology is often changed. These alterations and amendments plainly indicate a careful purpose' to settle clearly for the future and to re-establish the system of contribution originally enacted for the regulation of the Asylum.
An effort is made to construe this section 4820 as applying to all pensioners and requiring all to surrender their pensions upon entering the ‘Home. But this construction is evidently forced and is overthrown by the plain language of the section itself. It seems to be only necessary to read the language in *173 order to refute the construction. The section is reproduced at the expense of repetition, and is as follows:
“ Sec. 4820. The fact that one to whom a pension has been granted for wounds or disability received in the military service has not contributed to the funds of the Soldiers’ Home shall not preclude him from admission thereto; but all such ■ pensioners shall surrender their pensions to the Soldiers’ Home during the time they remain therein and voluntarily receive its benefits.”
And it is argued that the words “all such pensioners” here mean “all persons to whom pensions have been granted for wounds,” and that “the fact” mentioned that one has not contributed is not descriptive of the pensioner. The argument is unsound. The fact referred to in the statute is the fact of non-contribution by pensioners, and is as much a description of the individuals as the other clause speaking of them as pensioners for wounds. The word suoh” means pensioners of the like kind, that is, pensioners on account of wounds who have not contributed. If it had been the intention to include all pensioners, the word “such” was entirely inappropriate, and should not have been employed. But it has been used, and by every principle of grammatical construction it refers back to the clauses of the section which designate and describe a certain class of individuals. Had the word “ such” been omitted from the section, it would have stood thus: “ But all pensioners shall surrender their pensions.” The sentence might then have meant what the defendants contend it means. But unless we argue the word “ such” out of the statute, it must stand and have significance. Interpreted by the context, it refers to those pensioners who have not contributed, and not indiscriminately to all.
The construction given to these statutes by the Commissioner of Pensions was in accordance with these views when this case arose, and the interpretation by that officer is entitled to much weight. In the case of the United States v. Moore, the Supreme Court said: - “The construction given to a statute by those charged with the duty of executing it is always entitled .to the most respectful consideration, and ought not to be overruled without cogent reasons.” (Edwards v. Darby, 12 Wheat., 210, United States v. The State Bank, 6 Pet., 29; United States v. McDaniel, 7 id., 1.) The officers concerned are usually able men aud masters of the subject. Not uufrequently they are the *174 draftsmen of tbe laws they are afterwards called upon to interpret.” (95 U. &, 763.)
If, through inadvertence or precipitancy, as is claimed, Congress has thought proper, in fit and unmistakable terms, to provide for the galLant and patriotic men who have become disabled in the military service of the country a home towards the support of which their slender means have contributed and at the same time to continue to .pay their pensions, it is for Congress, and not for the courts, to repair the error complained of and to retrench its inconsiderate liberality. For us to do so were to transcend the judicial prerogative and to invade the constitutional sphere of an independent and co-ordinate department of the government.
It is therefore ordered, adjudged, and decreed that there be judgment in favor of the claimant as prayed for.