EichakdsoN, J.,
delivered the opinion of the court:
On the 13th of June, 1872, the claimant was appointed surveyor of customs at Troy, in the customs collection district of the city of New York, under the provisions of the Act March 2, 1799, ch. 22, § 5 (1 Stat. L., 631), which authorized the President, “if he judge it expedient, to appoint one other surveyor, to reside at such other place in said district as he shall appoint,” in addition to one at New York City and one at Albany. This provision was omitted in the revision of the statutes, and as part of the act in which it stood was incorporated therein, it was repealed (Rev. Stat., § 5596) by the passage of the Revised Statutes, June 22,1874, at .which date the repeal took effect. Section 5595 of those statutes declares that they embrace the laws in force on the 1st da3 of December, 1873, as they do where no alterations were made thereby, but alterations did not go into operation until the statutes were passed, June 22, 1874. This omission appears not to have been discovered by the officers of the government for nearly two years afterwards, and the claimant continued to act as surveyor until May 28,1876.
While he legally held the office, the Act March 2,1867, ch. 18& *313 (14 Stat. L., 546, Eev. Stat., § 3090), regulating tbe disposition of tbe proceeds of fines, penalties, and forfeitures incurred under tbe laws relating to customs, was in force, and so much as provided for tbe distribution of any part to informers and officers of tbe United States was repealed on tbe same day tbat tbe Eevised Statutes were enacted, June 22,1874, cb. 391, §§ 1, 2 (18 Stat. L., 186). Within tbat time fines, penalties, and forfeitures were incurred under tbe customs laws at tbe' port of New York, wbicb were paid into tbe Treasury as required by law, to tbe amount of $839,819.40 between June 13,1872,(and April 28, 1874, while there were in tbe district a collector and naval officer at New York, and a surveyor at each of tbe ports of New York, Albany, and Troy, and $14,604.11 between April 28, and June 24, 1874, when tbe law was- repealed, while in addition to said officers there was a surveyor at Port Jefferson, in said district.
In tbe one-fouxth part of such fines, &c., wbicb by tbe act of 1867 was required to be equally divided between tbe collector, naval officer, and surveyor, or such of them as are appointed for tbe district,” tbe claimant sets up in this action a right to share equally with each of those officersthat is, one-fifth of. one-fourth of tbe first-mentioned sum and one-sixth of one-fourth of tbe last sum. Tbe Secretary has distributed and’ paid said quarter to tbe collector, naval officer, and surveyor of tbe port of New York in equal portions, according to tbe uniform practice of tbe Treasury Department since tbe passage of that act.
Tbe case will be better understood if we consider tbe official status of tbe customs-officers and their relations to each other,, and review tbe course of legislation on tbe subject of tbe distribution of fines, penalties, and forfeitures from tbe first act of Congress in 1789 to tbe last in 1867.
.For customs purposes collection districts are established, each territorially described, embraacing towns, cities, waters, or shores; ten of wbicb are in tbe State of New York (Eev. Stat., § 2535). In each district there is a port of entry, wbicb is also, a port of delivery (Eev. Stat., § 2770). In most of tbe districts there are ports of delivery wbicb are not ports of entry. Each district has one, and only one, collector, who is required to reside at a port of entry; some few districts have respectively one, and none more than one, naval officer, and some have each one, and only one, surveyor, required in like manner to reside at a port of entry. There are, moreover, surveyors appointed to. *314 reside at ports of delivery in districts where there áre also surveyors at the ports of entry, as in the claimant’s district he was a surveyor required to reside at Troy, while there was one at Albany and another for part of the time at Port Gibson, in addition to the one at New York City (Rev. Stat., § 2536).
The Act July 31, 1780, ch. 5, § 38 (1 Stat. L., 48), to regulate the collection of duties, &c., provided:
“That all penalties,¿fines, and forfeitures recovered by virtue of this act (and not otherwise appropriated) shall, after deducting all proper costs and charges, be disposed of as follows: One moiety shall be for the use of the United States, and paid into the Treasury thereof; and the other moiety shall be divided into three equal parts, and paid to the collector, naval officer, and surveyor of the district wherein the same shall have been incurred ; and in such districts where only two of the aforesaid officers shall have been established, the said moiety shall be divided between them; and in such districts where only one of the aforesaid officers shall have been established, the said moiety shall be given to such officer: Provided, nevertheless., That in all cases where such penalties, fines, and forfeitures shall be recovered in pursuance of information given to such collector by any person other than the said naval officer and surveyor, the one-half of such moiety shall be given to the informer, and. the remainder thereof shall be disposed of between the collector, naval officer, •and surveyor in manner and form as above limited and expressed.”
That section was soon superseded by the Act of August 4, 1790, ch. 35, § 69 (1 Stat. L., 177) to provide more effectually for the collection of the duties imposed by law, &c., which provided:
“That all penalties, fines, and forfeitures recovered by virtue of this act (and not otherwise appropriated) shall, after deducting all proper costs and charges, be disposed of as follows: One moiety slialL be for the use of the United States, and paid into the Treasury thereof; the other moiety shall be divided into equal parts, and paid to the collector and naval officer of the district and surveyor of the port wherein the same shall have teen incurred, or to such of said officers as there may be in the said district; and in districts where only one of the aforesaid Officers shall be established, the said moiety shall be given to such officer : Provided,, nevertheless, That in all cases whore such penal-, ties, fines, and forfeitures shall be recovered in pursuance of information given to such collector by any person other than the naval officer or surveyor of the district, the one-half of such moiety shall be given to the informer, and the remainder thereof shall be disposed of between the collector, naval officer, and surveyor or surveyors, in manner aforesaid.”
The Act March 2,1799, ch. 22, § 97 (1 Stat. L., 697), while it made some additional provision not material to be considered *315 in this case, substantially, and in almost the identical language, re-enacted section 69 of the act of 1790, above quoted, so that it is unnecessary to repeat it here.
Thus the doubt which the first act presented, as to which surveyor was entitled to share in the proceeds of fines, &c;, under the words surveyor of the district, was removed by the next two succeeding acts on the subject, the true construction of which, and the intention of Congress expressed thereby, are clear. The second moiety was to be paid in equal parts to the collector and naval officer of the district and the surveyor of the port wherein the fines, &c., were incurred, there being but one such officer in any port, nnd not, as before, to the surveyor of the district, a designation which might apply with equal propriety, in some cases, to several such officers of different ports. The proviso adds an exception, that when the fines, &c., were recovered upon information of any person other than the naval officer or surveyor of the district, one-half of the second moiety was to go to the informer, and the other half to the collector, naval officer, and surveyor or surveyors “ in manner aforesaid,” that is, in equal parts to each. This proviso, contained in both the later acts, in connection with the other provisions wherein the word surveyor is used in the singular number, shows that Congress intended that all the surveyors of a district should share in the distribution only in cases where there was no informer other than one of the officers named, and that in other cases the surveyor of the port where the offenses were committed should alone, of all the surveyors, be entitled to share in the proceeds of fines, penalties, and forfeitures.
Thus the law stood until 1867, when the Act March 2 of that year, chapter 188, was passed (14 Stat. L., 546), wherein the following provisions (now Bev. Stat., § 3090) were enacted, superseding the sections of former acts, which we have before set forth:
“ That from the proceeds of fines, penalties, and forfeitures incurred under the provisions of the laws relating to the customs, there shall be deducted such charges and expenses as are by law in each case authorized to be deducted, and, in addition, in the case of the forfeiture of imported merchandise of a greater rmlne than five hundred dollars, on which duties have not been paid, or in ease of a release thereof upon payment of its appraised rmlue, or of any fine or composition in moniey, there shall also be deducted an amount equivalent to the duties in coin *316 upon such merchandise (including tlie additional duties, if any) which, shall be credited in the accounts of the collector as duties received, and the residue of the net proceeds aforesaid shall be paid into the Treasury of the United States and distributed, under the direction of the Secretary of the Treasury, in the manner following, to wit: One-half to the United States; one-fourth to the person giving the information which led to such seizure or to the recovery of the fine or penalty, and if there be no informer other than the collector, naval officer, or surveyor, then to the officer making the seizure; and the remaining one-fourth to he equally divided between the collector, nmal officer, and surveyor, or such of them as are appointed for the district in which the seiztore has been made or the fine or penalty incurred, or if there be only a collector, then to such collector
This act made extensive changes in the law, among which was a transfer of the duty of making the distribution of the proceeds of fines, penalties, and forfeitures to the Secretary of the Treasury, from collectors of customs, who had previously performed that service (Act 1799, ch. 22, § 89, 1 Stat. L., 695; Bradley’s Case, 12 C. Cls. R., 578), and who were thereafter required to pay the whole net' proceeds into the Treasury. The shares for distribution were changed from moieties to fourths, and the last fourth was to be divided between the collector, naval officer, and su/rveyor of the district; returning to the language of the first act of 1789, where the sam.e term, surveyor of the district, is used, and departing from that of the next two acts, by which the surveyor of the port where the fines were incurred was designated as the surveyor who was to share therein, and by which, in case there was no informer, all the surveyors in the district were to share equally with the collector and naval officer.
The question at once arose as to who was intended by the words surveyor of the district in this act, where there were several surveyors in the same district, one at the port of entry and delivery and others at ports of delivery only. The language was inaccurate in its application to such a case, and the proper construction to be given to it could not be determined beyond all doubt from the words of the act alone. One view was that siwveyor in the singular was to be taken in the plural signification where there were several in the district, and that all were entibiled to share alike, as is now urged by the claimant; but the plural form had been used, apparently with care, in the proviso in each of the next two preceding acts as to a certain class of cases, and its omission here seemed to indicate an intention *317 not to allow more than one surveyor to share in the distribution. Another view was that the surveyor of the port where the fines were incurred was intended, as expressed in each of the two former acts; but the change from that form of expression to surveyor of the district seemed to preclude the inference that Congress did not intend to mate a change in that respect.
The only other view which could be presented was that the surveyor at the port of entry alone was designated or intended to he designated; and this was supported by the fact that he had a position of much greater importance and responsibility than that of surveyors of ports of delivery, and was regarded as the principal surveyor of the district; and that nearly all fines, penalties, and forfeitures were incurred at the ports of entry. In this view the words “ or such of them as are appointed for the district,” following “ collector, naval officer, and surveyor,” were not supposed to enlarge the meaning of surveyor to the plural sense, as it could not so enlarge the meaning of collector or naval officer — because there was but one of each in any district — but were used rather to express the same meaning in more concise language, as the words in the act of 1789, to wit: “Where only two of the aforesaid officers shall have been established, the said moiety shall be equally divided between them, and in such districts where only one of the aforesaid officers shall have been established, the said moiety shall be given to such officer;” recognizing in no case more than three — one collector, one naval officer, and one surveyor; and as nearly the same words in each of the next two succeeding acts, “ or to such of said officers as may be in the said district ” — following “ collector, naval officer, and surveyor of the port ” — were manifestly used, to refer in no case to more than one surveyor, since there was never but one surveyor at any oneport. The Secretary of the Treasury adopted the latter construction, and held that the surveyor of the port of entry was intended, to the exclusion of the surveyors of ports of delivery, and that the former alone was entitled as such to share in the fines, penalties, and forfeitures. This was the contemporaneous construction made by the high executive officer appointed to execute the law, who we may presume understood the working of the previous acts and the circumstances under which the law was changed.
With this construction Congress never interfered while the law was in force; and all parties concerned seem to have acqui *318 esced therein until its correctness was drawn in question by the claimant and tlie surveyor at Albany, a few months before the repeal of all provisions on the subject. On the 20th of March of that year the claimant addressed a letter to the Secretary of the Treasury, a copy of which is annexed to his petition in this case, asking a reconsideration of the question, and that the opinion of the Attorney-General might be taken thereon. It was reconsidered, and the claimant was notified by letter of June 15, 1874, a copy of which is also annexed to the petition, wherein the Secretary says that the construction adopted seemed to him “ to be a reasonable one, and, having been acquiesced in ever since the passage of the law, cannot with justice or propriety be reversed.” The claimant appears to have made no further objections until March 3,1877, and he never gave notice that he intended to have the matter contested in court, nor asked the Secretary to retain the money in his control until a judicial determination could be had, but rather submitted to the adverse decision against him, until May, 1877, when he filed his first petition in this case. The letter of March 20, 1874, which his counsel calls a protest, in fact protested only against the award of money to himself alone as informer or seizing officer, which he was clearly entitled to, and the proper disposition of which was not involved in the question raised, although he no doubt supposed it was.
Under these circumstances we are all of opinion that the construction adopted has become the one which must govern all distributions under that act, and that it is now too late, after such vast sums of money have been paid out in accordance therewith, and the provisions of the law itself have been repealed, and can further operate only upon the few remaining cases of distribution on account of collections made for fines, penalties, and forfeiture incurred before June 22,1874.
In the recent case of the United, States v. Pugh (99 U. S., 265), the Chief Justice, in giving the opinion of the Supreme Court therein, says: It is a familiar rule of interpretation that in the case of a doubtful and ambiguous law the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect (Edwards’ Lessee v. Darby, 12 Wheat., 210). While, therefore, the question is one by no means free from doubt, we are not inclined to interfere, at this *319 late day, with a rule wbieb bas been acted upon by tbe Court of Claims and tbe Executive for so long a time.”
Tbe present case is one to wbieb that principle applies with peculiar force, especially as tbe construction of tbe law adopted by tbe Secretary of tbe Treasury does not appear unreasonable, .and might well bave been reached in tbe exercise of a sound judgment. We are therefore justified in dismissing tbe claimant’s petition, and such is tbe order of tbe court.