1 RicuiaedsoN, J.,
delivered the opinion of the court:
This case is founded upon transactions which took place after the passage of the Revised Statutes, and must be determined by the law as there found, except so far as it may have been altered by subsequent legislation applicable to the matters now in controversy.
Counsel have cited the earlier acts of Congress, and rested their arguments mostly thereon, as though they were still in force. It was claimed on the part of the defendants that the Revised Statutes, constituting a revision of the previous legislation, are only prima facie evidence of the existing law, evidence which may be overcome by showing that the revision in any particular under consideration is not a correct reproduction •of the former statutes. This is an entirely erroneous view of •Congressional legislation.
*86 To those persous who are not made familiar with the subject by frequent reference to the statutes, it is not strange that much difficulty is experienced in ascertaining the force and effect of the Eevised Statutes and the two publications known as the first and second editions. For convenient future reference, as well as for the purposes of the decision in this case, we will present some explanations which may be useful to those who may hereafter have occasion to consult the statute law.
The Eevised Statutes are an act of Congress, duly passed by the Senate and House of Bepresentatives, approved by the President, received by the Secretary of State and deposited in the State Department, where alone the originals of all laws of the United States are preserved. (Rev. Stat., § 204; Act December 28, 1874, 18 Stat., ch. 9, p. 294.) They were approved and became the law June 22, 1874. In section 5595 it is enacted that they “ embrace the statutes of the United States, general and permanent in their nature, in force on the first day of December, one thousand eight hundred and seventy-three, as revised and consolidated by commissioners appointed under an act of Congress.”
It was no doubt the desire and understanding of .Congress that the revision should generally reproduce and express the pre-existing laws so far as it was practicable to do so. But it is well known that in the multiplicity of statutes to be revised, the ambiguity of the language of many of them, and the great difficulty and embarrassment encountered in determining the effect of legislation upon earlier acts of the same subjects, the commissioners made numerous errors and omissions. While the act was under consideration by the House of Bepresenta-tives and the committee on the revision of laws, many changes were made in the language of the commissioners7 report, which in some instances may also have altered the law. As early as February 18, 1875, an act was passed entitled “An act to correct errors and to supply omissions in the Revised Statutes of the United States” (18 Stat. L., 316, ch. 80); and on the 27th of February, 18.77, another was passed entitled “An act to perfect the revision of the statutes of the United States, and of the statutes relating to the District of Columbia” (19 Stat. L., 240, ch. 69). By these and other acts several hundred errors and omissions have been corrected. There still remain, however, in the revision many alterations of former laws, which Congress have never yet seen fit to disturb.
*87 But whether or not the revision correctly reproduced the preexisting statutes in any particular case, the Bevised Statutes became the law of the land on the 22d of June, 1874, when they were enacted by Congress .and approved by the President, and they must so continue until altered by the same legislative power that created them. The pre-existing laws thus revised are repealed and no longer in force. Section 5596 declares expressly that “ all acfs of Congress passed prior to said first day of December, one thousand eight hundred and seventy-three, any portion of which is embraced'in any section of said revision are hereby repealed, and the section applicable thereto shall be in force in lieu thereof, all parts of such acts not contained in such revision having been repealed or superseded by subsequent acts, or not being general or permanent in their nature.” (Holmes v. Wilts, 11 La. Ann., 446; United States v. Hammond,, 2 Wood, C. C. R., 203; Hann v. United States, 14 C. Cls. R., 305; Boucicault v. Hart, 12 Blatch., 52; Bowen v. United States, 14 C. Cls. R., 162; affirmed on appeal, 100 U. S., 508.)
In case of ambiguous language in the Bevised Statutes, or uncertainty as to the true construction to be given to the words of any section, previous acts on the same subject may be referred to and examined for light on the object and intent of Congress as shown by the course of legislation, in the same manner as statutes in pari materia relating to the same subject may always be taken, compared, and construed together. But when the language is clear, the latest act, as expressing the latest will of Congress,.must govern and must supersede the pre-existing legislation inconsistent therewith. (Bradshaw v. United States, 14 C. Cls. R., 78; Hann v. United States, 14 id., 305, and other cases above cited.)
As to the printed publications, the first edition is a transcript of the original Bevised Statutes preserved in the Department of State, and is prima facie evidence thereof. ■ If, however, the correctness of the printed copy is drawn in question, the original is the only conclusive evidence of the exact text of the law.
The second edition is neither a new revision nor a new enactment, but is only a new publication. It is a compilation containing a copy of the original Bevised Statutes, like the first edition, with certain specific alterations and amendments made by subsequent enactments of the Forty-third and Forty- *88 fourth Congresses, incorporated according to the judgment and discretion of the editor, under authority of the law providing for his appointment (Act March 2, 1877, ch. 82, 19 Stat. L., 268). The editor had no power to. change the substance or alter the- language of the revision, nor to correct any errors or supply any omissions. The whole text of the Revised Statutes, as published in the first edition, is preserved; but where by the specific amendments made by the two Congresses mentioned, sections or parts of sections were repealed, those repealed provisions are printed in italics and included in brackets; and where, in like manner, by legislative enactment, words were required to be added or inserted, they are incorporated •in their proper places in ordinary Roman letters, and are also inclosed in brackets.
Section 79, referred to in the argument of this case, illustrates the manner in which the second edition was edited. In the original, and of course in the first edition, that section stood thus:
“ Sec. 79. After the fourth day of March, eighteen hundred and seventy-five, no money shall be paid from the Treasury for the publication of the laws in newspapers.”
The Act of February 18, 1875, ch. 80 (18 Stat. L., 317), provided that “ section seventy-nine is amended by striking out in the second line the words 1 no money shall be paid from the Treasury for/ and adding, at the end of the section, the words 1 shall cease.’ The editor incorporated the two together, thus:
“Sec. 79. After the fourth day of March, eighteen hundred and seven ty-five [no money shall be paid from the Treasury for] the publication of the laws in newspapers [shall cease].”
Omitting the words in' italics, this section expresses the law as it has stood since February 18, 1875, when the amendment was enacted.
The act for the preparation and publication of the second or new edition of the Revised Statutes provides that “the printed volume shall be legal evidence of the laws therein contained in all the courts of the United States and of the several States and Territories, but shall not preclude reference to, nor control, in case of any discrepancy, the effect of any original act as passed by Congress since the first day of December, eighteen hundred and seventy-three.” (Act March 2, 1877, ch. 82, 19 Stat. L., 268, as amended by Act March 9, 1878, ch. 26, 20 Stat. L., 27.)
*89 In tbe second edition, unlike tbe first, tbe statutes are preceded by tbe Declaration of Independence, tbe Articles of Confederation, tbe Ordinance of 1787 for tbe government of tbe Northwestern Territory, and tbe Constitution of tbe United States, with notes and references to judicial decisions and an analytical index to tbe same. They are followed by an appendix, containing tbe acts providing for tbe revision and publication of tbe statutes,-tbe act of 1874 reducing salaries wbicbbad been increased by tbe act of 1873, with tables showing tbe amount of each salary affected thereby, before and after tbe passage of tbe act, .and a reference index noting where each section of pre-existing statutes are reproduced in tbe Revised Statutes. Tbe general index is entirely new, and is constructed on a wholly different plan from that to tbe first edition.
With, these preliminary observations, we will proceed to tbe consideration of tbe law of this case.
Section 3823 of tbe Revised Statutes provides as follows:
“The Clerk.of tbe House of Representatives shall- select, in Virginia, South Carolina, North Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, and Arkansas, one or more newspapers not exceeding the number allowed by law, in which such treaties and laws of tbe United States as may be ordered for publication in newspapers according to law shall be published, and in some one or more of which so selected all such advertisements as may be ordered for publication in said districts by any United States court or judge thereof, or by any officer of such courts, or by any executive officer of tbe United States, shall be published, tbe compensation for which and other terms of publication shall be fixed by said Clerk at a rate not exceeding two dollars per page for tbe publication of treaties and laws, and not exceeding one dollar per square of eight lines of space for tbe publication of advertisements, tbe accounts for which shall be adjusted by tbe proper accounting officers and paid in tbe manner now authorized by law in tbe like cases.”
Section 3824 requires tbe Clerk of tbe House to notify each bead of tbe several executive departments of tbe papers selected by him, and makes it tbe duty of tbe several executive officers .charged therewith to furnish to such selected papers only, an authentic-copy of tbe publications to be made. Tbe act of February 18, 1875, prohibited tbe publication of tbe laws in newspapers.(Rev. Stat., second ed., § 79), but that is not material, since treaties and public advertisements of tbe deqiart-ments still remained to be published in newspapers.
*90 On tbe 14th of December, 1874, the Clerk of the House of Eepresentatives selected the claimant’s newspaper for the publication of treaties, laws, and advertisements, and fixed the rate of compensation therefor at one dollar per square of eight lines, &c., referring for his authority to the act of March 2, 1867. The reference was wrong, because that act had been repealed and sections 3823 and 3824 had been'substituted for it; but that was immaterial, since it was unnecessary for him to refer to any statute for his authority to act in the matter. (Kaufman’s Case, 12 C. Cls. R., 669.)
This did not give the claimant the rig'ht to publish in his newspaper at the expense ' of the government every public notice issued by any executive department, but only such as he had the written authority to publish from the head of such department, since section 3828 expressly so provides. It is as follows:
11 No advertisement, notice, or proposal for any executive department of the government, of of any bureau thereof, or for any office'therewith connected, shall be published in any newspaper whatever, except in pursuance of a written authority for such publication from the head of such department.” * *. *
It is therefore for the claimant to prove his written authority from the Postmaster-General for the publications for which he now seeks compensation.
It appears that on the 14th of April, 1875, the Postmaster-General, acting through his second assistant, requested the claimant in writing to publish an inclosed advertisement, provided it could be done for the sum of $99.37, and directing that if the compensation mentioned was not satisfactory the publication might “ be omitted.”
This was a conditional request ; and unless the terms of the condition were complied with, there was no authority from the Postmaster-General to publish the advertisement in the claimant’s newspaper. The request and the condition precedent were inseparable, and the claimant had no right to act upon the former and disregard the latter.
It must, be observed that the Postmaster-General did not assume to reduce or interfere with the rates established by the Clerk of the House of Eepresentatives. He named a sum in gross, and left it for the claimant to determine whether or not that was the amount to which he would be entitled under those rates. If the sum was found to be in accordance with those *91 rates or was satisfactory to tbe claimant, then he was to publish the advertisement; otherwise he was expressly directed not to insert it in his newspaper. The Postmaster-General had a right to ascertain and to be informed by the claimant, before any expense was incurred, exactly what the cost would be. It was a prudent precaution on the part of the Postmaster-General to enable him to exercise with intelligence the discretion intrusted to him. If the claimant had replied that the price named was lower than that which the ratés fixed by the Clerk of the House would give him, the Postmaster-General might have reduced the number of lines and have materially shortened the advertisement; or if he had already inserted it in several other newspapers in Virginia, or in one other only, the terms of the law would have been sufficiently complied with, and he might with propriety determine not to incur the additional expense of inserting the advertisement in the claimant’s, newspaper.
The claimant made no reply, but proceeded to publish the-advertisement; thus tacitly admitting that the sum'named by the Postmaster-General as the condition precedent to the publication was the amount to which he was entitled under the Clerk’s fixed rates or was satisfactory to him. If he intended to claim a larger amount than that proposed, he acted in bad faith towards the defendants, and endeavored to entrap the Postmaster-General into a liability which the latter never intended to incur.
After the publication of the first advertisement the claimant wrote to the Postmaster-General, objecting then, and for the-first time, to the price, but inclosing his bill, made out as-directed, for the sum specified by the department, and adding, “I will, of course, accept any amount allowed us; so please send me check for any amount' allowed, and much oblige,” &c.
Subsequently two other advertisements were published upon like requests, accompanied with like conditions precedent, specifying in each case the gross amount offered as compensation.. The claimant made no objection to these prices, and he has been paid in accordance with them.
■ In our opinion, the claimant is estopped by his own acts from claiming any greater compensation than that specified in the Postmaster-General’s several requests, to which he gave his-tacit assent in advance; and his petition must be dismissed.