Richabdson, Oh. J.,
delivered the opinion of the court:
These are motions to reinstate cases long since dismissed.
The case of Wade, administratrix, was filed May 24,1872, to recover the proceeds of property under the Abandoned or Captured Property Act of March 12,1863 (12 Stat. L., 120), and was dismissed on motion of the defendants for want of prosecution May 8, 1876. The present motion to reinstate the case was filed May 13, 1885.
The two cases of Martel, syndic, &c., were filed October 28, 1874, to recover the proceeds in the public Treasury of certain property alleged to have been seized in Louisiana by officers of the United States in the spring of 1863. It is further alleged that said property was not abandoned nor liable to seizure under the laws and usages of war, nor condemned as forfeited to the United States by any judicial proceedings, and that the United States retains and holds the proceeds as trustee, and is under an implied obligation to pay the same to the petitioner. No reference is made in this petition to the Abandoned or Captured Property Act. A motion to dismiss for want of jurisdiction was filed by the defendants April 21,1877, was submitted to the court by the respective parties January 21,1878, and on that day was sustained and the petition was thereupon dismissed for that reason. The present motion to reinstate these cases was filed November 5,1885.
When issue has been joined between the parties and they have had their day in court and been heard, the judgment ren *143 dered thereon, whether of dismissal for want of jurisdiction or on the merits, is one of those final judgments which at the end of the term in which they are entered “pass beyond the control of the court, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them.” (Bronson v. Schulten, 104 U. S. R.. 415; Russell’s Case, 15 C.. Cls. R., 168; Seat’s Case, 18 id., 468; Schell v. Dodge, 107 U. S. R., 629.) This court has always adhered to that doctrine and has never reinstated such cases.
But when a case has been dismissed merely for want of prosecution, through inadvertence or misapprehension, or the neglect of counsel, the court has not regarded it as coming-within that rule, and has sometimes, in its discretion, granted motions to reinstate cases thus dismissed, in order to protect the rights of parties and give them a hearing, when such motions have been made within a reasonable time, although at a term subsequent to dismissal, unless gross negligence was apparent. (Schieffelin’s Case, 8 C. Cls. R., 359; Matthews’s Case, 17 id., 220.) On every such motion, however, the court will look into the petition, and if it is clear that it does not set out a cause of action within the jurisdiction of the court, the motion will not be granted. (Garcia Case, 14 C. Cls. R., 121; Case of Whitney, administrator, 18 id., 19.)
The original petitions were filed more than two years after the suppression of the rebellion, and so did not present cases within the time limited by the Abandoned or Captured Property Act, which provides as follows :
“Sec. 3. * * * And any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims; and on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive the residue of such proceeds, after the deduction of any purchase-money which may have been paid, together with the expense of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
It was stated by counsel at the argument, no doubt correctly, that the Wade case was abandoned and the Martel cases were dismissed because this court had held in Hayeraft’s Case (8 C. Cls. R., 483) that-it had no jurisdiction of claims for the pro *144 ceeds of such property, except under the Captured or Abandoned Property Act, and that decision had been affirmed by the Supreme Court on appeal January 18,1875. (22 Wall., 81, and 10 C. Cls. R., 95.)
The avowed object of counsel in asking for a reinstatement of these cases is that upon a trial they may raise the question that the two years’ limitation of that act vas repealed by the Revised Statutes, leaving applicable thereto only the general limitation of six years provided for in section 1069. More than six years having elapsed since the passage of the Revised Statutes, and the causes of action are barred, even according to the claimants’ theory of the law, unless they can be prosecuted under the original petitions which were filed before the expiration of that time.
The question has been elaborately and ably argued by counsel, and the court has given to it the most careful consideration. We are all of opinion that Congress did not intend by the Revised Statutes to repeal the two years’ jurisdictional limitation of the Abandoned or Captured Property Act, and that the language of these statutes will not admit of such an interpretation.
The object of the revision of the statutes was not to change existing laws, but to “ revise, simplify, arrange, and consolidate all statutes of the United States, general and permanent in their nature, which shall be iu force at the time the commissioners should make the final report of their doings,” as was expressed iu the acts for the appointment of commissioners of review. (Act of June 27, 1866, ch. 140; 14 Stat. L., 74.)
At the time of the appointment of commissioners under that act, the two years’ limitation of the Captured or Abandoned Property Act had not even begun to run, for the rebellion was not suppressed until August 20,1866, when the President issued his proclamation to that effect. (14 Stat. L., 814, 817; Anderson’s Case, 9 Wall., 56, and 7 C. Cls. R., 121.) In drafting section 1059, reciting the jurisdiction of this court, the commissioners very properly included therein that of the Abandoned or Captured Property Act. But instead of re-enacting the full language, for conciseness and condensation, they merely referred to the act, and provided that the court should have jurisdiction of “all claims for the proceeds of captured or aban- *145 donecl property, as provided in the act of March 12,1863.” The whole section in as follows:
“ Sec. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First. All claims founded upon any law of Congress, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, and all claims which may be referred to it by either House of Congress.
“ Second. All set-oil's, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands-whatsoever, on the part of the Government of the United States against any person making claim against the Government in said court.
“ Third. The claim of any paymaster, quartermaster, commissary of subsistence, or other disbursing officer of the United States, or of his administrators or executors, for relief from responsibility on account of capture or otherwise, while in the. line of his duty, of Government funds, vouchers, records, or papers in his charge, and for which such officer was and is held responsible. *
“ Fourth. Of all claims for the proceeds of captured or abandoned property, as provided by the act of March 12, eighteen hundred and sixty three, chapter one hundred and twenty, entitled ‘•An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States,’ or by the act of July two, eighteen hundred and sixty four,' ■chapter two hundred and twenty five, being an act in addition thereto : Provided, That the remedy given in cases of seizure under the said acts, by preferring claim in the Court of Claims, shall be exclusive, precluding the owner of any property taken by agents of the Treasury Department as abandoned or captured property in virtue or under color of said acts from suit at common law, or any other mode of redress whatever, before any •court other than the said Court of Claims: [Provided, also, That the jurisdiction of the Court of Claims shall not extend to any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the Army •or Navy engaged in the suppression of the rebellion.”]
This is as plain as words can make it, that the jurisdiction was to remain exactly as provided in that act, which limited the filing of petitions to two years after the suppression of the rebellion.
When Congress came to enact the revision, June 22, 1874, although that two years had passed, there were more than three hundred cases pending in this court which had been brought within the time of limitation, and of which this provis *146 ion continued its jurisdiction. This was sufficient reason for retaining the jurisdictional provision, as it was for retaining the appropriation clause of section 3689, which appropriates sufficient money “ for the return of proceeds from the sales of captured and abandoned property in insurrectionary districts to the owners thereof, who may, to the satisfaction of the Court of Claims, prove their right to, and ownership of, said property.” This last clause is much relied upon by the claimants’ counsel. But it must be taken and interpreted with reference to the section which specified who might prove such claim to the satisfaction of the. court. Thousands of dollars were paid under this appropriation to those who, having filed their petitions within the two years’ limitation, finally recovered thereon many years subsequently.
When the commissioners’ report was under legislative consideration Congress was not engaged, as is well known as a matter of public history, in establishing new policies and in making new provisions, but in éndeavoring to have the revision express correctly the then existing laws, and the following section recites that it does so express them :
“ Sec. 5595. The foregoing seventy-three titles embrace the statutes of the United States, general and permanent in their nature, in force on the first day of December, one thousand, eight hundred, and seventy-three, as revised and consolidated by commissioners appointed under an act of Congress.” * * *
Section 5599, if it does not exactly cover the claimants’ cases, indicates very clearly that Congress did not intend that the revision should be construed to affect any previously existing limitation. It is as follows :
“ Sec. 5599. All acts of limitation, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures, embraced in said revision and covered, by said repeal shall not be affected thereby, but all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising, or acts done or committed, prior to said repeal, may be commenced and prosecuted within the same time as if said repeal had not been made.”
There are some instances, no doubt, where the language is so clear that it must be held to have' altered the pre-existing law, whether by accident or design. (Bowen’s Case, 14 C. Cls. R., 162, affirmed on appeal, 100 U. S. R., 508; Deffebach v. Houke, 115 U. S. R., 402.)
*147 In all doubtful cases, however, where the language of the revision is ambiguous and uncertain, arising from condensation or otherwise, the well-settled meaning, object, and policy of the pre-existing laws revised and re-enacted therein must be held to be continued as the true interpretation of the legislative will. (Kensett v. Stivers et al., 18 Blatch., 397; Campbell v. James et al., 3 Fed. Rep., 513; Watson’s Case ante.)
The court will not construe doubtful language so as to work “ an incidental and accidental change of the law beyond the contemplation of the legislature.” (Wilcox Case, 12 C. Cls. R., 495, affirmed on appeal, 95 U. S. R., 661; Illinois Central R. R. Co.’s Case, 18 C. Cls. R., 135, 136.)
Long contemporaneous interpretation by ail parties concerned is against the position taken by the' claimants’ counsel. It was not till nearly nine years after the passage of the Bevised Statutes that it occurred to them, or to anybody else, as they admitted at the argument, to raise the question. During that time nearly two hundred cases in this court were dismissed because they had been instituted after the expiration of the two years’ limitation, and the only objection ever made to their dismissal was that the parties might have further time to obtain Congressional legislation. The whole business pending in the court under the act had been brought to an end before this new doctrine was thought.of. {Hodges’s Case, 18 C. Cl., R., 700.)
It is inconceivable that, had there been any intention in Congress to open the jurisdictional limitation of the Abandoned or Captured Property Act by the adoption of the Bevised Statutes, it should never have occurred to such active, earnest, able, and astute counsel as were engaged in those cases, and should have entirely escaped the notice of the court when the cases were pending.
The motions are overruled.